UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE E. THOMAS,

                Plaintiff,

      v.

NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL
DISABILITIES,

                Defendant.
_____

Case # 21-CV-6577-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Stephanie E. Thomas brings this disability discrimination action against her former employer, the New York State Office for People with Developmental Disabilities ("Defendant" or "OPWDD"). ECF No. 1. She alleges that Defendant discriminated against her by denying her request for a reasonable accommodation of her qualified disability in violation of Section 504 of the Rehabilitation Act of 1973. *Id.* ¶ 44. Defendant has moved for summary judgment, arguing that Plaintiff does not qualify as an individual with a disability for the purposes of the Rehabilitation Act and that Defendant did not fail to provide her a reasonable accommodation. ECF No. 25; *see* ECF No. 25-9 at 1. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

OPWDD is a state agency that provides services to persons with developmental disabilities, such as autism spectrum disorder, cerebral palsy, intellectual disabilities, and "dually diagnosed

conditions, including psychiatric illness." ECF No. 25-1 ¶ 2.[1] It provides these services through thirteen Developmental Disabilities Services Offices ("DDSOs"), including its Finger Lakes DDSO, which provides services to residents of the Finger Lakes region. *Id.*

Defendant employed Plaintiff Stephanie E. Thomas, primarily as a Direct Support Assistant ("DSA"), from August 16, 2007 to March 7, 2020. *Id.* ¶ 4. As a DSA, Plaintiff was tasked with monitoring and caring for individuals with developmental disabilities. *Id.* ¶ 5. Her duties included "advocating for, encouraging, guiding, and teaching individuals in expressing personal choice, developing daily living skills and habits, taking care of their personal needs," as well as "assuring community integration" and the health and safety of the individuals she cared for. *Id.*

Plaintiff first worked at the Long Pond Individualized Residential Alternative ("IRA"), but transferred to the Pine Trail IRA ("Pine Trail") in October 2007. *Id.* ¶ 6. An IRA is a group home where individuals with developmental disabilities reside and receive services. *Id.* ¶ 6. In 2009, Plaintiff was working at Pine Trail when it was the target of a robbery. *Id.* ¶ 9. Plaintiff developed post-traumatic stress disorder ("PTSD") as a result of her experience. *Id.* ¶ 20; *see also* ECF No. 32-3 ¶ 20 (explaining that PTSD was in Plaintiff's medical records since the 2009 robbery).

IRAs, like Pine Trail, may be arranged in "clusters" of multiple homes. *Id.* ¶ 7. An employee assigned to one IRA may therefore be required to work at another IRA within the cluster when needed, such as when the other IRA is short staffed. On September 18, 2018, Plaintiff's supervisor, Development Assistant 3 ("DA3") Linsey Weidman informed Plaintiff that she would

---

[1] This Court takes the following facts from Defendant's statement of material facts (ECF No. 25-1), Plaintiff's response to Defendant's statement of material facts (ECF No. 32-2), Plaintiff's statement of disputed material facts (ECF No. 32-1), and the documents cited therein. Unless otherwise noted, the facts are undisputed. Where the facts are undisputed, the Court cites only Defendant's statement of material facts.

be "mandated" to work at Pine Trail from September 18 through 20, 2018.  *Id.* ¶ 18; ECF No. 33-2, Ex. A. ¶ 18.[2]  DSAs, like Plaintiff, may be mandated to work anywhere within Defendant's state operations.  ECF No. 25-1 ¶ 8.  This mandate system is governed by a collective bargaining agreement ("CBA") with Plaintiff's union, CSEA.  *See id.*  According to Plaintiff, however, she could not in fact be mandated to work on those days because "September 18-20 fell on [her] pass days," or days off, and she could therefore not be mandated to work on those dates.  ECF No. 32-3 ¶ 18; ECF No. 32-2 ¶ 13.  Plaintiff did not report to Pine Trail on September 18 through 20, and was not assigned there at any time after September 2018.  ECF No. 25-1 ¶ 19.

That October, Plaintiff applied for a reasonable accommodation for her PTSD, which would allow her to work as a DSA, but not at Pine Trail.  *Id.* ¶ 20; ECF No. 32-2 ¶ 20; ECF No. 32-3 ¶ 20.  On her Family and Medical Leave Act certification, Plaintiff's psychiatrist stated that working at Pine Trail "can trigger [her] PTSD symptoms."  ECF No. 32-9 at 3.  These symptoms included seeing shadows at nighttime, but no effects on her speech, breathing, sleep, or day-to-day life.  ECF No. 25-1 ¶¶ 37-40.  According to Defendant, Plaintiff's request was assigned to Affirmative Action Administrator ("AAA") Victoria Scott, who contacted Plaintiff and her supervisor, Treatment Team Leader Robert Kneepel, to discuss her position and its essential functions.  *Id.* ¶ 21.  Plaintiff, on the other hand, has "no knowledge" of the conversation with Kneepel and states that she was contacted by human resources and an AAA named Stephanie.  ECF No. 32-3 ¶ 21.

On November 28, 2018, AAA Scott denied Plaintiff's request not to work at Pine Trail because Pine Trail was part of the cluster of IRAs within which Plaintiff was assigned to work.

---

[2] In reply, Defendant states that it "made a clerical error in paragraph 18 of [its] Rule 56 Statement" when it indicated that Weidman informed Plaintiff on June 23, 2018 that she would be mandated to work at Pine Trail.  ECF No. 33-2 ¶ 4.  Defendant submitted a corrected Rule 56 Statement, which indicates that Weidman informed Plaintiff on September 18, 2018 that she would be mandated to work at Pine Tral.  ECF No. 33-2, Ex. A. ¶ 18.

ECF No. 25-1 ¶ 22.  He stated that reassignment to other IRAs was "an essential function of [Plaintiff's] job as a DSA which cannot be eliminated by an accommodation."  *Id.*  Scott also advised Plaintiff that she could use the bidding process to obtain a permanent position elsewhere, ECF No. 25-1 ¶ 22, although Plaintiff states that she is unaware of any suggestion by AAA Scott that she bid for any other cluster.  *See* ECF No. 32-3 ¶ 23.  In any event, Plaintiff did not place a bid for any other cluster from 2018 until her employment with Defendant ended.  *Id.* ¶ 23. *But see* ECF No. 32-3 ¶ 23 (denying knowledge of "any suggestions from AAA Scott about placing bid sheets on any cluster").

On March 25, 2019, Plaintiff applied for a reasonable accommodation for osteoarthritis in her knees, ECF 32-1 ¶ 13, which would (1) excuse her from performing "SCIP" or "SCIP-R" (collectively, "SCIP-R") and (2) allow her to perform sedentary work, engage in limited standing, and to limit walking to no more than five minutes per hour.  ECF No. 25-1 ¶ 27; *see also* ECF NO. 25-1 ¶ 24 (explaining that SCIP-R is the former name for Defendant's physical intervention training, which is now called "PROMOTE").  As part of PROMOTE, Defendant's employees learn tools and strategies for supporting individuals who "may be having, or are about to have, a behavior incident."  *Id.*  It also teaches staff how to safely conduct physical interventions.  *Id.*  All staff, including DSAs, who provide direct support to individuals with developmental disabilities must receive PROMOTE training.  *Id.* ¶ 25.  Accordingly, Plaintiff received such training while working as a DSA.  *See id.*

Human Resources Specialist ("HRS") Kelley Benzel reviewed Plaintiff's 2019 accommodation request.  *Id.* ¶ 28.  After speaking to Plaintiff and her supervisor, Benzel considered the availability of other options but ultimately denied her request because performing SCIP and SCIP-R were essential functions of the DSA position.  *Id.* ¶ 28.

At the time she submitted her request, Plaintiff had not reported to work since early March. *See* ECF No. 25-1 ¶ 29.  From March 7, 2019 to March 30, 2019, she used accrued leave to cover her absences.  *Id.*  From March 31, 2019 to March 6, 2020, she was "on approved sick leave at half pay."  *Id.*  According to Plaintiff, her medical records demonstrate that she was able to return to work and to work less than full duty, with "no [SCIP-R], limited standing[] and walking to 5 minutes."  ECF No. 32-3 ¶ 29.  That is, Plaintiff asserts that her medical records indicate that she was able to return to work, but with restrictions.  *Id.* ¶ 30.  Her condition also would have permitted her to perform secretarial, computer, or office work.  ECF Nos. 32-2 ¶ 45, 32-3 ¶ 45.  According to Defendant, on the other hand, Plaintiff stated that her doctor "put [her] on disability because [her] body was not able to go back to work."  ECF No. 25-1 ¶ 30 (alterations in original).

Because Plaintiff was absent from work for one year and was not medically cleared to perform the essential duties of her job within one year of the commencement of her sick leave, Defendant notified Plaintiff that she would be terminated pursuant to New York Civil Service Law § 73.  ECF No. 25-1 ¶ 31.  Plaintiff then applied for retirement, which became effective on April 28, 2020.  *Id.* ¶ 32.

## LEGAL STANDARD

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(a) if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  In deciding whether there is a genuine

dispute as to a material fact, the court is not to evaluate credibility, and must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 454 (2d Cir. 2010).

Once the moving party has met its burden, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The nonmoving party may not, therefore, "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Nor is a "mere scintilla of evidence" in support of the nonmoving party enough. *Anderson*, 477 U.S. at 252. The nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading. . . ."). But, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," the court must deny summary judgment. *Anderson*, 477 U.S. at 248.

## DISCUSSION

Defendant argues that summary judgment is warranted because Plaintiff was not disabled for the purposes of the Rehabilitation Act and because both working at Pine Trail and performing SCIP-R are essential functions of the position of DSA. ECF No. 25-9 at 3-15. Defendant also argues that it appropriately engaged in an interactive process regarding Plaintiff's accommodation requests. *Id.* at 16-20. Finally, Defendant argues that Plaintiff was properly terminated under New

York Civil Service Law § 73—not terminated or forced to retire for discriminatory reasons—after her year-long absence from work. *Id.* at 20-24.  Plaintiff contests each of these arguments.  ECF No. 32 at 9-16.  As explained below, the Court finds that Defendant is entitled to summary judgment.

## I.   Disability Discrimination Under the Rehabilitation Act[3]

Under Section 504 of the Rehabilitation Act of 1973 (the "Act"), "no otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits or, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Claims of intentional discrimination under the Act are analyzed pursuant to the burden-shifting framework described in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See Lanard v. McDonough*, 578 F. Supp. 3d 371, 382 (W.D.N.Y. 2022).  Accordingly, to survive summary judgment, a plaintiff must first establish a *prima facie* claim of discrimination.  *Id.*  Once she has done so, a presumption arises that more likely than not, the adverse conduct was based on the consideration of impermissible factors and the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment.  If the employer offers such a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.  *Id.*

To make out a *prima facie* claim of employment discrimination in violation of the Act, a plaintiff must allege that: (1) her employer is subject to the Act; (2) she was disabled within the meaning of the Act; (3) she was otherwise qualified to perform the essential functions of her job,

---

[3] Claims under the Rehabilitation Act and the ADA are evaluated under the same standards. *See Stanley v. City Univ. of New York*, No. 18 Civ. 4844, 2023 WL 2714181, at *9 n.6 (S.D.N.Y. Mar. 30, 2023) (collecting cases).  The Court therefore cites decisions considering claims under both statutes.

with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *Id.* (quoting *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 538, 540-41 (S.D.N.Y. 2014).  Discrimination in this context may take the form of "disparate treatment, disparate impact, or failure to make a reasonable accommodation."  *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016).  A plaintiff must further show that discrimination was the "but-for cause" of any adverse employment action.  *Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019).

### a.  Individual With a Disability

The Rehabilitation Act defines "individual with a disability" by reference to the Americans with Disabilities Act ("ADA").  *See Lanard*, 578 F. Supp. 3d at 383.  "The ADA defines a disability as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).'"  *Id.* (quoting *Alexiadis v. N.Y. Coll. Of Health Pros.*, 891 F. Supp. 2d 418, 428 (E.D.N.Y. 2012); *see also* 42 U.S.C. § 12102(1).[4]  Major life activities include, for example, caring for oneself, performing manual tasks, sleeping, walking, standing, lifting, bending, and working, as well as the operation of a major bodily function.  42 U.S.C. § 12102(2)(A)-(B).

In determining whether a plaintiff suffers from a disability, a court must assess "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment."  *Mazza v. Bratton*, 108 F. Supp. 2d 167, 173 (E.D.N.Y. 2000) (citing *Bragdon v. Abbot*, 524 U.S. 624, 631 (1998)).  "To determine whether a major life activity is substantially

---

[4] Plaintiff does not plead a record of impairment that substantially limits one or more of her major life activities or that she was regarded as having such an impairment.  *See Fowler v. Hannibal Central School*, No. 23-CV-6509, 2024 WL 49852, at *4 n.4 (W.D.N.Y. Jan. 4, 2024).

limited by an impairment, this Court considers, among other factors, "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact." *Jones v. N.Y.C. Trans. Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021) (summary order) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)). "To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Freeman v. Kirisits*, 818 F. App'x 34, 40 (2d Cir. 2021) (summary order) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), *superseded on other grounds by* 42 U.S.C. § 12102(3)(A)). In other words, employees who are precluded only from doing their specific job do not have a disability. *See Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020).

Plaintiff contends that she was disabled for the purposes of the Act because of her PTSD and osteoarthritis. ECF No. 32 at 10-11. Defendant argues that Plaintiff's claims of PTSD are inconsistent with her work history at Pine Trail between 2009 and 2018 and her pursuit of a supervisory position there between 2011 and 2016. *See* ECF No. 25-9 at 5. Defendant also argues that Plaintiff's assertion that working at Pine Trail triggered her PTSD symptoms is not enough to make her PTSD a disability. *Id.* at 5-6. As for Plaintiff's osteoarthritis, Defendant contends that this condition did not substantially limit her capacity to work or to perform any other major life activity. *See id.* at 8-9.

The Court begins with Plaintiff's PTSD. Although PTSD constitutes an impairment, the evidence in the record fails to demonstrate that it substantially limited a major life activity. Plaintiff asserts that her PTSD affected only one major life activity, working, and in only one way, preventing her from working at Pine Trail after the 2009 robbery. *See* ECF No. 32 at 10. However, Plaintiff continued to work at Pine Trail for years after the robbery. *See* ECF No. 25-1 ¶ 10; ECF

No. 32-2 ¶ 10.  Moreover, even after transferring to another location, she applied for supervisory positions at Pine Trail six times.  *See* ECF No. 25-4 ¶¶ 10-16 (describing Plaintiff's seven bids for supervisory positions at Pine Trail from 2011 to 2016).  Although the parties differ on the exact circumstances, the record is clear that the first time Plaintiff asserted that she could not work at Pine Trail because of her PTSD was in 2018, after her then-supervisor informed her that she would be assigned to Pine Trail.  *See* ECF No. 25-6 ¶ 5 (describing Plaintiff's October 9, 2018 request not to work at Pine Trail because of her PTSD); ECF No. 32-1 ¶ (stating that Plaintiff notified her supervisor that she could not work at Pine Trail because of the robbery after she learned about her assignment on or about September 18, 2018).

In any event, to the extent that Plaintiff's PTSD limited her ability to work at Pine Trail, that is not enough to establish that it substantially limited her ability to work.  The certification by Plaintiff's psychiatrist states, for example, that Plaintiff has "PTSD symptoms only at one group home, which is Pine Trail.  She can work in every other place as per part of her employment."  ECF No. 32-9 at 4.  At best then, the evidence demonstrates that Plaintiff's PTSD left her unable to perform only a single, specific job.  *See Woolf*, 949 F.3d at 94.  Because Plaintiff cannot show that her work-induced PTSD substantially limited her ability to work in "a class or broad range of jobs," no reasonable factfinder could conclude that her PTSD substantially limits her ability to work such that it constitutes a disability for the purposes of the Act.  *Id.*

Further, although Plaintiff does not advance these arguments in opposing summary judgment, there is some evidence that her PTSD affected her in other ways.  However, that evidence too is insufficient to avoid summary judgment.  For example, Plaintiff testified that she is claustrophobic, sees shadows at night, and has trouble sleeping because of her PTSD.  ECF No.

25-8 at 91-101.   Nothing in the record, however, demonstrates that these limitations were substantial.  *See Lanard*, 578 F. Supp. 3d at 383.

The most significant limitations that Plaintiff identifies relate to her poor sleep.  However, the evidence that Plaintiff does cite in support of her statement that her PTSD "causes her to experience sleeplessness," does no more than state that she could not work at Pine Trail because it triggers her PTSD symptoms.  ECF No. 32-9 at 3.  It does not refer to difficulty sleeping at all. *See id.* at 2-5.  And, while Defendant has provided deposition testimony in which Plaintiff stated that she wakes up every two hours while sleeping, ECF No. 25-8 at 100, Plaintiff provides no medical record substantiating those specific limitations.  *Compare Farina v. Branford Bd. Of Educ.*, No. 09-CV-49, 2010 WL 3829160, at *12 (D. Conn. Sept. 23, 2010), *aff'd*, 458 F. App'x 13, 16 (2d Cir. 2011) (summary order) (plaintiff failed to raise triable issue as to whether she was substantially limited in sleeping where she affirmed that she regularly slept two hours per night and physician testified that another physician had arranged a sleep study but plaintiff failed to provide medical evidence substantiating limitations), *with Felix v. New York City Trans. Auth.*, 154 F. Supp. 3d 640, 654 (S.D.N.Y. 2001) (progress reports demonstrating that plaintiff slept only one to two hours per night demonstrated that plaintiff's PTSD substantially limited the major life activity of sleeping).

While medical evidence is not always necessary to survive summary judgment, the non-medical evidence in the record here fails to convey in any detail the substantially limiting nature of Plaintiff's PTSD as required to avoid summary judgment in the absence of medical evidence. *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 44 (2d Cir. 2015).  Further, Plaintiff testified that her PTSD does not limit her in other major life activities such as caring for herself or carrying out manual tasks, such as washing, eating, and dressing.  *See* ECF No. 25-8 at 96-97.  Accordingly,

even viewing the evidence in the light most favorable to Plaintiff, no reasonable factfinder could conclude that Plaintiff's PTSD constitutes a disability for the purposes of the Act.

A reasonable jury could, on the other hand, conclude that Plaintiff's osteoarthritis substantially limited her ability to stand and walk, both of which are major life activities for the purposes of the Rehabilitation Act.  *See* 42 U.S.C. § 12102(2)(A).  Plaintiff has offered medical records documenting the need to "limit standing and walking to [five] minutes per hour," to perform "mostly sedentary work," and not to perform "SKIP or SKIPR."  ECF No. 32-10 at 3; *see also* ECF No. 32-9 at 11 (health care provider certification identifying restrictions in walking and standing).  By preventing Plaintiff from standing or walking for more than five minutes, Plaintiff's osteoarthritis substantially limits the major life activities of standing and walking.  *See Malzberg v. New York Univ.*, 2022 WL 889240, at *10 (S.D.N.Y. Mar. 25, 2022) (concluding that back pain that prevented plaintiff from standing for longer than fifteen to twenty minutes substantially limited major life activity of standing).  Plaintiff's progress notes also demonstrate that she received injections for her knees in 2019, consistent with her testimony that she began receiving injections for her osteoarthritis after a 2018 incident in which she was unable to "bear weight anymore."  ECF No. 25-8 at 110; ECF No. 32-10 at 2.  She has also provided documentation noting that she would need treatment every three months and would need five-to-seven days off to recover each time.  ECF No. 32-9 at 12.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could therefore conclude that she had a disability, bilateral osteoarthritis of the knee, for the purposes of the Act.

### b.  Otherwise Qualified With or Without Reasonable Accommodation

Defendant argues that Plaintiff's requested accommodations were not reasonable because both working at Pine Trail and performing SCIP-R were essential functions of her position as a DSA.  ECF No. 25-9 at 9-15.  Plaintiff asserts in response that her requests were "not only feasible but contemplated as reasonable" by Defendant's disability accommodation policies.  ECF No. 32 at 12.  Because the Court has found that Defendant is entitled to summary judgment as to whether Plaintiff's PTSD constituted a disability, the Court considers only the accommodations requested for Plaintiff's osteoarthritis.

A person is otherwise qualified for a job under the Act "if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir. 1995).  "It follows that an employer is not required to accommodate an individual with a disability by eliminating essential functions from the job." *Id.* at 140.  "Essential functions" are the 'fundamental' duties to be performed in the position in question," not those that are "merely 'marginal.'" *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1)).  Evidence of whether a particular function is essential includes, among other things, the employer's judgment as to which functions are essential, written job descriptions prepared before advertising or interviewing applicants for the job, the amount of time spent on the job performing the function, the consequences of not requiring an employee to perform the function. *Id.* (citing 29 C.F.R. § 1630.2(n)).  Determining whether a particular accommodation is "reasonable" generally requires flexible, fact-specific inquiry. *See Borkowski*, 63 F.3d at 138-40.

Defendant argues that performing physical interventions, such as SCIP-R, is an essential function of the DSA position.  In support of this assertion, Defendant points to the DSA job

description and examination announcement, as well as the consequences of excusing a DSA from performing physical interventions. *See* ECF No. 25-9 at 14. Plaintiff, on the other hand, asserts that performing SCIP-R cannot be considered essential because the DSA job description does not indicate that it is an essential function and because Defendant's policies indicate that reasonable accommodations may include "modifications or adjustments to the manner or circumstances under which a job is performed." ECF No. 32 at 11-12; ECF No. 32-4 at 9.

SCIP-R is a "restraint technique[] to prevent individuals with disabilities from harming themselves or others during a significant behavioral incident." ECF No. 25-3 ¶ 3. Defendant's physical intervention training "teaches staff how to conduct physical interventions in a safe manner." *Id.* ¶ 8. According to Human Resources Specialist Kelly J. Benzel, "[a]ll staff, including DSAs, must receive PROMOTE or SCIP-R training," and Plaintiff completed such training on at least three occasions. *Id.* ¶ 9. Although it does not specifically refer to "SCIP-R," the job description on which both Plaintiff and Defendant rely states that a DSA "applies valid and accepted limits for inappropriate behavior and helps control and restrain individuals who exhibit challenging behaviors." ECF No. 25-3 at 12; ECF No. 32-8 at 5. The DSA Trainee civil service examination announcement likewise notes that "[t]hese positions are physically demanding," and that DSAs "need to be prepared to act to ensure the health and safety of individuals in emergency situations," and "must be able to stand, bend, stretch, and lift bedridden and/or incapacitated individual[s]." ECF No. 25-3 at 31.

Benzel also describes the consequences of not requiring a DSA to perform SCIP-R. Specifically, she states that excusing Plaintiff from performing physical interventions would create a "health and safety risk for herself, the individuals served by [Defendant], and her co-workers." ECF No. 25-3 ¶ 7. An individual might, for example, "suddenly exhibit[] escalating behaviors"

and, because "[t]here is no guarantee that there would be others around to physically restrain the individual for [Plaintiff]," the individual "may attack Plaintiff or another staff member or cause injury to himself or herself." *Id.* Moreover, Plaintiff could not be excused from working with individuals who might need to be restrained "because working with individuals who may have behavioral problems is part of her job duties" as a DSA. *Id.*

Plaintiff offers little to undermine Defendants' argument that performing SCIP-R was an essential function. Her only argument—that if it were considered essential, Defendant was required to indicate that it was essential in the job description—does not withstand scrutiny. To start, Plaintiff provides no support for her assertion that for a function to be deemed essential, the job description must identify it as such. Moreover, this purported requirement would be inconsistent with the Second Circuit's approach to determining whether a function is essential, under which no one factor, including a written job description, is usually dipositive. *See Stone*, 118 F.3d at 97. Accordingly, the job description's purported failure to specifically identify SCIP-R as an essential function does not prevent this Court from concluding that it was one.

Instead, the Court concludes that, even viewed in the light most favorable to Plaintiff, Defendant has established that there is no genuine dispute as to whether SCIP-R was an essential function. The job description identifies restraining individuals who exhibit challenging behaviors as one duty of a DSA, even if it does not identify the specific technique by name. *See Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (rejecting argument that performing immunizations *by injection* was not essential because job description merely stated that administering immunizations was an essential duty). And nothing Plaintiff has presented undermines Defendant's evidence of the serious consequences of excusing Plaintiff from performing SCIP-R. *See Shepheard v. City of New York*, 577 F. Supp. 2d 669, 676-77 (S.D.N.Y.

15

2008) (plaintiff not otherwise qualified where she could not perform essential functions, such as responding expeditiously to emergencies involving incarcerated individuals, with or without reasonable accommodation).

Because excusing Plaintiff from performing SCIP-R would therefore entail eliminating an essential job function and cannot be considered a reasonable accommodation, no reasonable juror could conclude that Plaintiff was qualified to perform the essential functions of her position as a DSA with or without a reasonable accommodation.

### c.  Failure to Engage in an Interactive Process

Defendant argues that, even though Plaintiff was not disabled for the purposes of the Rehabilitation Act and was not otherwise qualified to perform the essential functions of her job, Defendant engaged in the required interactive process with her.  ECF No. 25-9 at 15-20.  Plaintiff argues that the evidence demonstrates that Defendant did not engage in that process.  *See* ECF No. 32 at 13-14.

The Act contemplates that employers will engage in an interactive process with their employees, through which they work together to assess whether an employee's disability can be reasonably accommodated.  *See Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77 (2d Cir. 2020) (describing interactive process requirement in the context of a Rehabilitation Act claim).  However, "an employer's refusal to provide an accommodation—as evidenced by the employer's failure to engage in a sufficient interactive process—does not allow a plaintiff to avoid summary judgment unless [she] also establishes that, at least with the aid of some identified accommodation," she would be able to perform the essential functions of the position.  *Baker v. MTA Bus Co.*, No. 18-CV-12231, 2023 WL 4896686, at *31 (S.D.N.Y. Aug. 1, 2023) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100-01 (2d Cir. 2009)).  That is, an

employer's failure to engage in this interactive process does not relieve a plaintiff of her burden of demonstrating that some accommodation of her disability was possible. *McBride*, 583 F.3d at 101.

Accordingly, Defendant's alleged failure to engage in an interactive process with respect to finding Plaintiff an accommodation does not constitute an independent violation of the Act. *See Nazario v. Promed Personnel Servs. NY Inc.*, No. 15 Civ. 6989, 2017 WL 2664202, at *7 (S.D.N.Y. June 16, 2017). As explained above, because performing SCIP-R was an essential function of her position as a DSA, Plaintiff has not demonstrated that her request not to perform SCIP-R was a reasonable accommodation that would allow her to perform the essential functions of her position as a DSA. *See id.* ("Where, as here, no accommodation was available, an employer's alleged failure to engage in the interactive process does not compel a finding for Plaintiff."). Plaintiff cannot, therefore, avoid summary judgment by merely pointing to the purported lack of an interactive process.

### d. Conclusion

Defendant has established that it is entitled to summary judgment on Plaintiff's disability discrimination claim because it has established that there is no genuine dispute of material fact as to (1) whether Plaintiff's PTSD constituted a disability under the Act and (2) whether being excused from SCIP-R was a reasonable accommodation that would allow her to perform the essential functions of her position as a DSA. Moreover, because Plaintiff has failed to identify a reasonable accommodation, her argument that Defendant failed to engage in a sufficient interactive process is not enough to avoid summary judgment. Defendant is therefore entitled to summary judgment on Plaintiff's disability discrimination claim under the Rehabilitation Act.

II.      **Retaliation**

In her response to Defendant's motion, Plaintiff also appears to assert that Defendant retaliated against her for complaining about Defendant's alleged failure to accommodate her disabilities.  ECF No. 32 at 15-16.  Specifically, Plaintiff argues that Defendant retaliated by terminating her and taking disciplinary actions against her after she complained about discrimination.  *Id.* at 15.  Defendant argues that she has failed to show either that Defendant took adverse action against her or that there is a causal connection between her protected activity and any adverse action on the part of Defendant.  ECF No. 33 at 6-10.

The Court has identified a different problem with Plaintiff's retaliation claim: Plaintiff did not actually plead a retaliation claim in her complaint.  Plaintiff's complaint refers to retaliation only twice: first, in setting out the nature of action, stating that Plaintiff was "retaliated against after she opposed" Defendant's discriminatory practices and second, in the prayer for relief, seeking an order enjoining Defendant from "retaliating against qualified individuals with a disability when seeking reasonable accommodation for said qualified disability, or perceived disability in the workplace." ECF No. 1 at 1, 9.

These stray references to retaliation, together with the remainder of her complaint, are insufficient to allege a claim of retaliation.  To succeed on a retaliation claim, the plaintiff must meet the initial burden of establishing a *prima facie* case by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *See Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) (summary order) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  Plaintiff may have alleged that she participated in protected activity by seeking accommodations, *see Weixel v. Bd. Of Educ. of City*

*of New York*, 287 F.3d 138, 149 (2d Cir. 2002), but she does not allege a causal connection between her accommodation requests and any adverse action on the part of Defendants, *see e.g.*, ECF No. 1 ¶¶ 31 (Defendant's denial of accommodation requests was not in keeping with its obligation to engage in an interactive process with Plaintiff), 33 (denial of accommodations resulted in Plaintiff's early retirement), 39 (Defendant "scornfully discriminated" against Plaintiff on the basis of disability), 41 (Defendant discriminated against Plaintiff by failing to accommodate her), 44 (Plaintiff was subject to adverse actions as a result of disability discrimination).  Moreover, the complaint does not once mention the principal protected activity upon which Plaintiff relies: her March 2019 internal complaint.  *See* ECF No. 1 ¶¶ 21-22, 26-27, 28-30 (discussing accommodation requests but not internal complaint); ECF No. 32 at 15-16 (memorandum in opposition to summary judgment tying disciplinary actions and termination to Plaintiff's internal complaint).

A brief in opposition to a summary judgment motion is not the place to raise new claims. *See Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1183, at 29 n.9 (3d ed. 2004)); *Helesti v. Lufthansa German Airlines, Inc.*, No. 99-CV-4793, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment.").  Plaintiff has therefore inappropriately raised her retaliation claim for the first time in opposition to summary judgment.  Accordingly, the Court does not consider such a claim.  *See Lyman*, 364 F. App'x at 701; *see also Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 569 (W.D.N.Y. 2018) (declining to reach retaliation claim raised for first time in opposition to summary judgment).

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, ECF No. 25, is

GRANTED.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 15, 2024
      Rochester, New York

                                             _____
                                             HON. FRANK P. GERACI, JR.
                                           United States District Judge
                                           Western District of New York